## PIGGINS v. FELLINGER.

1. APPEAL AND ERROR—SETTLEMENT OF RECORD—EXTENSION OF TIME.

Where, after various extensions of time, party appealing from decree, entered October 6, 1944, noticed and served on appellee's counsel a proposed record on appeal on March 11, 1946 and noticed it for settlement before the trial judge on March 15, 1946, plaintiff sought an adjournment for one week but trial judge adjourned matter to April 19, 1946, more than 1 year and six months from date of entry of decree, and time was then further extended upon defendant's showing that noncertification of record was for reasons not within his control, defendant is not to be deprived of his right to an appeal (3 Comp. Laws 1929, § 15510; Court Rule No. 66, § 2 [1945]).

2. CORPORATIONS—ASSIGNMENT OF CONTRACTS TO DIRECTORS—APPROVAL OF BOARD OF DIRECTORS.

Assignment of selling contract of subdivision by agent company to its president and an employee of the company, which deprived the company of the sole source of repayment for the improvements required in the selling contract *held*, void, where not approved by the board of directors.

3. SAME—PRESIDENT—GOOD FAITH—DEALING WITH ASSET OF CORPORATION.

The utmost of good faith is required of a president of a corporation in making an assignment of an asset of the company to himself and an employee of the company.

4. SAME—GOOD FAITH—ASSIGNMENT OF SELLING CONTRACT.

Where it appears that the utmost of good faith was not shown by either the president of company nor its employee to both of whom a valuable selling contract was assigned by the president without the approval of the board of directors, the assignment was void as to both assignees.

5. RECEIVERS—CONTRACTS.

In a receiver's suit to set aside an assignment of a selling contract to the president and an employee of the company in receivership, he may not claim the assignment was a valid contract so far as it will aid the purposes of the receiver and a void contract for some other purposes.

6. BROKERS—COMMISSIONS—CORPORATIONS—ASSIGNMENT OF SELLING CONTRACT—DIRECTORS.

Where assignment of real estate brokerage company's selling contract as to a subdivision was held void because made by president to himself and an employee without the approval of the board of directors, measurement of employee's commissions therein specifically fixed is disregarded and both parties are relegated to the employee's general contract with the company as to such commissions.

7. COSTS—BOTH PARTIES PREVAILING IN PART.

No costs are allowed on appeal where both parties have prevailed only in part.

Appeal from Wayne; Miller (Guy A.), J. Submitted April 15, 1947. (Docket No. 7, Calendar No. 43,360.) Decided June 27, 1947.

Bill by Edward S. Piggins, receiver of Toynton-Brown Company, a Michigan corporation, against

Joseph A. Fellinger and others to set aside an assignment and for an accounting. Decree for plaintiff. Defendant Fellinger appeals. Modified and affirmed.

*Peck & Kramer,* for plaintiff.

*Harry Z. Marx* (*Thomas L. Thomson,* of counsel), for defendant Fellinger.

REID, J. This litigation has to do with some of the affairs of Toynton-Brown Company. Certain other affairs of that company have been before this Court in the case of *In re Dissolution of Toynton-Brown Company,* 308 Mich. 727, and in the case of *Fellinger* v. *Wayne Circuit Judge,* 313 Mich. 289. The bill in this case was filed by Edward S. Piggins, receiver of the Toynton-Brown Company. Plaintiff claims that an assignment by Charles F. Brown, president of Toynton-Brown Company, of the interest of the company to himself (Brown) and defendant Joseph A. Fellinger, is void as being made in breach of fiduciary duties. By the assignment in question, Charles F. Brown undertook to assign the selling agent's rights of Toynton-Brown Company as to some real estate owned by Joseph E. McClelland and Elizabeth McClelland, his wife.

Three principal questions are raised by the parties. One has to do with the right of this Court to entertain jurisdiction of an appeal where the record was not settled by the trial judge within 1 year and 6 months after the entry of the decree. The second question involves the right of the president who was also director of the corporation to sell an interest in a selling contract, without the approval of the board of directors, to himself and another person who was an employee of the com-

pany. The third question has to do with the amount of commission payable to defendant Fellinger if the assignment in question is set aside. The decree of the trial court was favorable to plaintiff on the second and third questions above referred to. Defendant Fellinger appeals.

As to the first question above stated, it is the claim of plaintiff that under the statute, 3 Comp. Laws 1929, § 15510 (Stat. Ann. 1943 Rev. § 27.2610), the Supreme Court has no jurisdiction to extend the time for taking and perfecting of appeals beyond 1 year and 6 months from the date of the entry of the decree sought to be appealed from. Plaintiff further relies upon the last sentence in Court Rule No. 66, § 2 (1945), which recites:

"The Supreme Court may, upon proper application and for good cause shown, extend the time for settling the record on appeal beyond 1 year from entry of judgment for an additional period not to exceed 6 months."

The decree appealed from was filed October 6, 1944. Claim of appeal was filed October 10, 1944. The typewritten transcript of the testimony and proceedings consisted of some 444 pages of typewritten matter. At various times various extensions of time to settle the record were made extending the time to and including May 21, 1945. On May 14, 1945, defendant Fellinger made a motion for 60 days' further extension, which motion was denied by the circuit judge. Defendant Fellinger sought mandamus to require the circuit judge to extend the time. The writ was denied by us on January 7, 1946, at which time the trial court's jurisdictional limit of one year had expired. Defendant Fellinger by motion in the Supreme Court asked further time. On March 5, 1946, we granted

defendant 60 days from January 22, 1946. It appears that on March 11, 1946, defendant prepared, noticed and served on plaintiff's counsel, a proposed record on appeal, and noticed it for settlement before the trial judge on March 15, 1946. Defendant Fellinger made a showing to the effect that plaintiff asked for an adjournment of one week from March 15, 1946, to prepare amendments and exhibits to be incorporated in the record, and that defendant Fellinger's counsel agreed to the adjournment for one week from March 15, 1946, but that the trial judge adjourned the matter not to March 22, 1946 but to April 19, 1946, which latter date was more than 1 year and 6 months from the date of the entry of the decree sought to be appealed from, and that no opportunity was given defendant to obtain certification of the record before expiration of 18 months from entry of the decree appealed from. On March 26, 1946, defendant Fellinger filed and served notice of a motion for further extension of time, claiming that the reasons for the noncertification were beyond the control of the defendant. On April 4, 1946, we entered an order based on the showing made by defendant, granting defendant 60 days from and after April 4, 1946, within which to have the case settled on appeal. We did this because of the showing that was made to the satisfaction of this Court that the noncertification of the record on appeal was a matter which had occurred for reasons not within the control of defendant. We have heretofore held that it was not the intention of the legislature "to deprive a party of his right to an appeal because not taken within a time fixed from circumstances beyond his control." *Cameron* v. *Calkins*, 43 Mich. 191. See, also, *Perkins* v. *Perkins*, 173 Mich. 690, 694. Plaintiff's objection to the extension is without merit.

Charles F. Brown and his wife, Gladys F. Brown, were the owners of one half of the capital stock of the Toynton-Brown Company and Ralph E. Toynton was the owner of the other half, and the said three persons, together with Jennie D. Toynton, wife of Ralph E. Toynton, she acting as secretary, were the' directors and officers of the corporation. On July 21, 1939, defendants McClelland entered into an agreement, known as exhibit A in this record, with the Toynton-Brown Company, which agreement constituted the Toynton-Brown Company McClellands' agent to sell lands in Southfield township, Oakland county, for subdivision purposes. The owners, McClelland and wife, were to receive not less than $400 per acre. All above $400 per acre (net to owners) was to be the commission of the company as selling agent. Toynton-Brown Company was obligated at its own expense to grade a road to meet the approval of the Oakland county road commission and as soon as practical, gravel the same in accordance with the county's specifications.

It was the claim of Charles F. Brown in the suit which on appeal was before this Court in *Re Dissolution of Toynton-Brown Company, supra,* that at the same time that the agreement, exhibit A, was entered into, another document, exhibit B, was executed, assigning the interest of Toynton-Brown Company to Charles F. Brown and Joseph A. Fellinger. In a voluntary proceeding for dissolution of the corporation, a receiver was appointed. During the receivership, in pursuance of the agreement of the parties, a board of arbitrators, consisting of seven members of the Detroit Real Estate Board, was appointed and heard disputes about corporation matters. The decision of the arbitrators required Charles F. Brown to assign to the corpo-

ration his undivided one-half interest in the agreement with McClelland and wife above referred to. See *In re Dissolution of Toynton-Brown Company, supra,* 734. In our decision in that case, the decree which confirmed such decision of the arbitrators was affirmed by this Court. The bill in the case at bar attacks the right of Fellinger to the other one-half interest in the agreement with the McClellands.

Charles F. Brown and Joseph A. Fellinger in the case at bar both testified that Mr. Toynton knew about the McClelland matter, that he was unwilling to have the matter stand on the company books as a company matter and seemed to feel that the venture was unwise, and that accordingly, exhibit B, the assignment to Brown and Fellinger, was signed by Brown because Toynton objected to the selling contract, including some outlay for improvements on the property, being assumed by the company. It seems that exhibit B, the assignment to Brown and Fellinger, was in a file in the safe to which all the officers of the company had access, and references to the selling contract as payments came in were on the books of the company in a manner which could have attracted the attention of Mr. Toynton to the method of keeping account of this subdivision on the books of the company.

As before noted, Mrs. Toynton was the secretary of the company and in actual charge of the office. The assignment to Brown and Fellinger left the company still entitled to a "selling commission." The testimony of Mr. Toynton indicates that 20 per cent. was the regular selling commission and that 20 per cent. was the commission set forth in exhibit 6, which will hereafter be referred to and which was an unsigned statement left in the company's file by Brown as to the method of handling the McClelland subdivision. In exhibit 6 appears the

item, "Toynton-Brown Co. Comm. rate: 20%," so apparently the Toynton-Brown Company was authorized to have 20 per cent. commission notwithstanding the assignment to Brown and Fellinger. Toynton was the only witness who testified to anything that would show an actual intent to defraud the company or that the company to any extent was actually defrauded by exhibit B.

The proposed setup of the company, which seems to have served the purpose of a set of bylaws, provided that the company should not be obligated financially by any of the officers for an amount in excess of $50 without the approval of the board of directors. The assignment of the McClelland selling contract by Brown to himself and Fellinger deprived the company of the sole source of repayment for the improvements required in that selling contract to be made by the company, and the amount of the improvements evidently far exceeded $50. It can be considered that the assignment is void because not approved by the board of directors.

We held in *Re Dissolution of Toynton-Brown Company, supra,* that the assignment was void as to Brown. The utmost of good faith was required of Brown in making the assignment to himself and Fellinger. See *Mayhew* v. *Edward G. Budd Manufacturing Co.,* 258 Mich. 381. That utmost of good faith is not shown in the case at bar. Fellinger with full knowledge of the circumstances is not to be treated as having acted in good faith. We accordingly hold that the assignment to Brown and Fellinger was void as to Fellinger also.

There remains the question of the commission to which Fellinger is entitled. Fellinger procured for the Toynton-Brown Company the contract with the McClellands, on which matter he had been working for a very great length of time. He finally, after

much persuasion, and after many attempts, succeeded in getting the McClellands to make the sales agreement in question, exhibit A. Fellinger also sold most of the lots that were sold in the subdivision. He was a salesman regularly under general contract with the company to make sales for the company. His contract was in writing but it was not produced upon the hearing. It was agreed, however, that his contract with the company was the same as a blank form which was offered in evidence, being exhibit 20, which contained the following:

"When the salesman shall perform any service hereunder, whereby a commission is earned, said commission shall, when collected, be divided between the broker and salesman, in which division the salesman shall receive 40 per cent., the lister 10 per cent., and the broker shall receive the balance."

There is nothing in exhibit A, the selling agreement with the McClellands, to indicate that the company shall receive only a 20 per cent. sales commission. The company in its agreement with the McClellands was entitled to receive all the profit that was made on the sales of lots in this particular subdivision over and above $400 an acre and expenses. Mr. Fellinger, therefore, under his general contract would be entitled to a commission of 10 per cent. as the lister because he procured the contract with the McClellands. As to all sales made by him, he would also be entitled to 40 per cent. of the profits of the company over and above $400 an acre and its expenses. That this was the understanding of the parties clearly appears in the record. Both papers, exhibit A, the McClelland contract authorizing Toynton-Brown Company to act as the

McClellands' representative, and exhibit B, which we have found void, were drawn by Mr. Brown without the guidance of any attorney and are very poorly drafted documents.

Mr. Brown also drafted and apparently filed in the company's office an article, exhibit 6, heretofore referred to, which is as follows:

"McClelland's
College View Subdivision

| | |
|---|---|
| DESCRIPTION: | Part of the W. ½ of N. W. ¼ Sec. 27 Southfield Twp. |
| LOCATION: | S. E. corner 10 Mile & Redford Roads. |
| PRESENT OWNER: | Chas. F. Brown and J. A. Fellinger. |
| DATE ACQUIRED: | July 21, 1939. |
| TITLE—How HELD: | Contract. |
| MTGEE OR VENDOR: | Joseph E. McClelland and Elizabeth McClelland. |
| RELEASE CLAUSE: | $400.00 per acre. |
| TOYNTON-BROWN Co. COMM. RATE: | 20%. |
| HOW PAYABLE: | ½ of all collections. |
| SALESMEN'S COMM.: | C. F. Brown—R. E. Toynton —J. A. Fellinger—10%. OTHERS—7½%—payable out of first commission received. |
| COOPERATING BROKER COMMISSION: | 7½%" |

It will be seen that exhibit 6 presumes that Toynton-Brown Company is to have a commission rate of 20 per cent. This, however, can only be understood to be a commission to the company on the strength of exhibit B being treated and considered as a valid and controlling document. With exhibit B held void, Toynton-Brown Company's commission rate is the entire profit that it makes

on the deal over and 'above its expenses and $400 per acre to the owners.

Exhibit 6 further has an item, "SALESMEN'S COMM.: C. F. Brown—R. E. Toynton—J. A. Fellinger—10%. OTHERS—7½%—payable out of first commission received." No showing was made that Fellinger agreed to exhibit 6 as a modification of his general sales agreement, and the construction that the trial court put upon exhibit 6 that Fellinger shall have only 10 per cent. commission, is a construction based on considering part of the arrangements of the parties under exhibit B, the assignment, as though continuing and valid, whereas we have found the entire assignment invalid. The trial court found that the salesmen, Brown, Toynton or Fellinger, whó were designated in exhibit 6 to receive 10 per cent., shall receive 10 per cent. of the 20 per cent. designated as the company's selling commission. We determine that exhibit 6, which was placed in the file without Mr. Fellinger's consent or acquiescence, is not a valid modification of his general contract as salesman. The commission in this case is governed by Fellinger's general contract. It does not lie with the receiver to say that for certain purposes exhibit B is a valid contract so far as it will aid the purposes of the receiver and a void contract for some other purposes.

In view of our decision, other questions raised do not require further discussion.

Mr. Fellinger is entitled to receive 40 per cent. of the profits of the company on all lots in the McClelland subdivision that were sold by Fellinger, and he is entitled to receive 10 per cent. of the company's profit as lister on all lots sold in the subdivision. Apparently a further accounting will be needed.

The decree appealed from is affirmed, except as herein modified as to the rate of commission of Fellinger. The suit is remanded to the trial court for such proceedings as shall be found necessary. Both parties having prevailed in part, no costs are allowed.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, NORTH, and DETHMERS, JJ., concurred.